**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| VTT MANAGEMENT INC.,<br>Plaintiff,<br><br>v.<br>FEDERAL INSURANCE COMPANY,<br>Defendant. | Case No: 5:17-cv-767-G |

**PLAINTIFF'S MOTION IN LIMINE**

COMES NOW Plaintiff, VTT Management Inc. ("VTT"), and moves the Court for an Order in Limine preventing Defendant, Federal Insurance Company ("Federal"), and its attorneys, representatives, and witnesses from arguing, implying, inferring or presenting evidence, whether testimonial or documentary, as to following matters:

1. **Experts added by Defendant after denying Plaintiff's claim (John Osteraas, William R. Coleman and Navid Nastar).** Federal Insurance Company inspected Plaintiff's building with the adjuster and Rimkus Consulting Group Engineer Timothy France and Integrity Forensic & Engineering Engineer Mark Hergenrether in late November or early December of 2016. Federal subsequently denied coverage for Plaintiff's earthquake claim on March 10, 2017 based on the inspection and the reports of Mr. France and Mr. Hergenrether. *See* Denial Letter, Exhibit 1 [Federal/VTT 906-914]. The first Rimkus report was dated January 9, 2017. A second Rimkus report was dated March 21, 2017. This report only concerned the water main break and whether it was related to the earthquake. Those two reports (without photographs) are Exhibits 2 and 3.

Mark Hergenrether's report was dated February 10, 2017 and is attached as Exhibit 4 (without photographs). The Rimkus engineer was focused on whether the structure of the building itself was damaged in the earthquake. The focus of Mark Hergenrether was whether there was damage to the mechanical and plumbing systems in the building.

As soon as the Federal adjuster, Terry Watkins, received word that VTT was going to hire an attorney regarding the denial, he consulted with his supervisor, Dave Trippel, and hired another structural engineer, John Osteraas, to essentially say that the Rimkus engineer was correct. *See* email, Exhibit 5 [Federal/VTT 18], Exhibit 6 [Federal/VTT 13], and Exhibit 7 [Federal/VTT 14]. Mr. Osteraas prepared a report and had an Oklahoma licensed engineer sign it for him on June 28, 2017. The first eleven pages of the report (without the hundreds of pages of attachments including the Hergenrether and Rimkus reports) are attached as Exhibit 8.

Federal subsequently hired another structural engineer, Navid Nastar, who wrote a report dated September 14, 2018, saying essentially what Osteraas and France had already said. *See* Nastar report (without photographs), Exhibit 9. Federal also hired Robert Coleman, who wrote a report on September 14, 2018. *See* Exhibit 10 (without photographs). It is undisputed that the Federal Insurance Company adjusters did not consult with these experts or rely upon anything they said in denying the claim on March 10, 2017. These experts were only hired after Federal became aware that VTT rejected the denial and was hiring a lawyer.

Under Oklahoma law, an insurer has an "implied-in-law duty to act in good faith and deal fairly with the insured to ensure that the policy benefits are received." *Newport*

*v. USAA*, 2000 OK 59, 11 P.3d 190, 195 (*citing Christian v. American Home Assurance Co.*, 1977 OK 141, 577 P.2d 899, 901). The essence of a bad faith action "is the insurer's unreasonable bad-faith conduct, including the unjustified withholding of payment due under the policy." *Id*., 11 P.3d at 195 (citation omitted). When presented with a claim by its insured, an insurer "must conduct an investigation reasonably appropriate under the circumstances" and "the claim must be paid promptly unless the insurer has a reasonable belief that the claim is legally or factually insufficient." *Id.* (*citing Buzzard v. Farmers Ins. Co.*, 1991 OK 127, 824 P.2d 1105, 1109 ("*Buzzard II*").

The central inquiry in determining if an insurance company has violated its duty to its insured is whether the insurer "had a good faith belief, **at the time its performance was requested**, that it had a justifiable reason for withholding [performance] under the policy." *Buzzard v. McDanel*, 1987 OK 28, 736 P.2d 157, 159 ("*Buzzard I*") (emphasis in original). *See also, Heffron v. Dist. Court of OK County*, 2003 OK 75, 77 P.3d 1069, 1077 (finding that the key question in determining whether an insured has breached its duty to its insureds is "whether the insurer had a justifiable, reasonable basis to withhold [performance] **when the insured requested the carrier to perform its contractual obligation**") (emphasis added); *Buzzard II*, 824 P.2d at 1109 (stating that the focus whether an insurer acted in accordance with its duty to its insured is the knowledge and belief of the insurer at the time performance is requested) (emphasis added).

"The knowledge and belief of the insurer during the time period the claim is being reviewed is the focus of a bad-faith claim." *Buzzard I*, 736 P.2d at 159 (emphasis added). Thus, the only information relevant in determining whether an insurer complied with its

duty to its insured is that upon which the insurer relied in refusing payment. *Buzzard II*, 824 P.2d at 1114. Post-denial investigation and evaluation are irrelevant. Thus, in *Buzzard II*, the trial court's decision to exclude the after-the-fact testimony of Farmers' accident reconstruction expert was affirmed. The Oklahoma Supreme Court explained:

> **The information relevant at trial was that upon which Farmers relied in refusing payment.** The reconstructionist was not asked to evaluate the accident until after the denial of the claim. Thus, Farmers could not have relied on his opinion in denying the claim. [824 P.2d at 1114] [italics in original; other emphasis added].

Similarly, in *Newport*, the District Court refused the defendant UM insurer's request to instruct the jury on the defense of unavoidable accident. It also refused to admit the deposition of a treating physician of the plaintiff's decedent, despite the defendant's claim that the deposition was relevant to the issue of causation. The jury returned a bad faith verdict and the insurer appealed both of the above rulings. The Supreme Court affirmed both decisions, finding that neither the issue of unavoidable accident nor the deposition of the decedent's treating physician were relevant to the knowledge and belief of the defendant UM insurer at the time it was evaluating Mrs. Newport's UM claim. *Newport*, 11 P.3d at 199-200. *See also*, *Rose v. Prudential Prop. & Cas. Ins. Co.*, 992 F.2d 1223 (10th Cir. 1993) (*citing Buzzard II*, 824 P.2d at 1114 and stating that "[i]nformation not relied upon by the insurer in denying the claim is not relevant in a bad faith action."); *Skaling v. Aetna Ins. Co.*, 799 A.2d 997, 1010 (R.I. 2002) (noting that information acquired by an insurer subsequent to the denial of the claim is neither relevant nor admissible evidence in the bad faith action).

In this case, Federal said it relied upon the opinions of Mr. France and Mr. Hergenrether when it denied VTT's claim. *See* claim supervisor Dave Trippel deposition, Exhibit 11, p. 89, l. 22-p. 90, l. 4:

> Q: Your testimony would be that as of the date of the denial in March 10, 2017, Chubb, Federal, had all the information it needed in order to make a correct and fair decision on the claim, true?
>
> A: Yes, based on the information we had at the time of the coverage opinion, we were able to render the opinion. Yes.

The other three "me too" engineers it now puts forward as experts were hired after the denial of this claim. Those witnesses provided no information whatsoever to Federal that was relevant to "the knowledge and belief of [Federal] at the time performance is requested." *Buzzard II*, 824 P.2d at 1114. Because those engineers were not asked to evaluate the matter until after the denial of the claim, Federal "could not have relied on [their] opinion[s] in denying the claim." *Id.* Their opinions are wholly irrelevant, and their testimony should thus be excluded.

Moreover, the after-the-fact testimony of these witnesses is needlessly cumulative. Therefore, it should also be excluded pursuant to Fed. R. Evid. 403, which allows the exclusion even of relevant evidence if its probative value is substantially outweighed by "a danger of … needlessly presenting cumulative evidence." *Id.* "This rule applies to cumulative expert testimony." *Valley View Angus Ranch v. Duke Energy Field Servs., LP*, CIV-04-191-D, 2008 WL 2329169, at *11 (W.D. Okla. June 4, 2008) (*citing United States v. Arney*, 248 F.3d 984, 990-91 (10th Cir. 2001) and *Wilson v. Merrell Dow Pharmaceuticals, Inc.*, 893 F.2d 1149, 1151 (10th Cir.1990). *See also, Marsee v. United*

*States Tobacco Co.*, 866 F.2d 319, 324 (10th Cir. 1989) (no abuse of discretion for district court to exclude rebuttal testimony of two of plaintiff's experts on the issue of causation; testimony was cumulative of that presented by two other of the plaintiff's experts during the plaintiff's case in chief); *In re Air Crash Disaster*, 86 F.3d 498, 527 (6th Cir. 1996) (affirming trial court's decision to exclude various experts whom defendant wished to call as cumulative, stating that "a court is free to exclude any expert testimony, including the testimony of an announced expert, if the testimony is cumulative or redundant under Fed. R. Evid. 403"); *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1258 (2d Cir.1987) (affirming district court's exclusion of expert testimony as cumulative where at least four other witnesses testified on the same subject).

Here, Federal has endorsed three additional experts to simply to "rubber stamp" what its first two experts, who were actually involved in the underlying claim denial, are purportedly going to say. There is no reason why Federal needs five expert witnesses to say the same things, particularly when three of those engineers were not even involved in the underlying denial here at issue. The presentation of such testimony should also be excluded pursuant to Fed. R. Evid. 403 because it is cumulative and repetitive. For the above reasons, VTT respectfully requests the entry of an Order in Limine prohibiting the defense from presenting the testimony, reports, and exhibits of the three additional engineers—John Osteraas, Navid Nastar, and William Coleman—on the basis that the presentation of all such testimony is irrelevant, cumulative, repetitive, and a waste of time.

2. **The testimony and letters from plumbers at Goforth Plumbing and Streets Mechanical.** These plumbers were consulted by Plaintiff through its property

manager to provide opinions on the repair of the plumbing system. They were not hired and are not going to be witnesses for Plaintiff although they did write two short letters regarding their observations/opinions. The letters themselves are inadmissible hearsay. Fed. R. Evid. 802. The witnesses from Goforth Plumbing and Streets Mechanical were not interviewed or considered by Defendant in denying the claim in March of 2017. Their letters are attached as Exhibits 12 and 13. Their testimony is expected to be consistent with these letters. Federal did not rely on either of these plumbers or either of these letters when they denied the claim. Further, the plumbers' testimony in the letters would be redundant and cumulative with the testimony of Defendant's hired expert, Mark Hergenrether of Integrity Forensics and Engineering. It was Mr. Hergenrether's report that Federal says it relied upon in the handling of this claim. The duty of good faith and fair dealing was well settled in Oklahoma when Federal got this claim. Federal's adjusters know that they are required to investigate in good faith and that the focus of the duty of good faith and fair dealing is on what the adjusters actually knew and actually did in the claim, not on what the defense lawyers can churn up in their post-litigation investigation.

Further, these persons were consulting experts who were not retained by Plaintiff to testify or to write a formal expert report. Neither of them are proper witnesses in this case. Defendant has not provided an expert report from either the Goforth Plumbing or Streets Mechanical representatives. Therefore, they cannot testify for Defendant as experts. Fed. R. Civ. P. 26(a)(2)(B). Further, since Plaintiff's representatives only consulted Goforth Plumbing and Streets Mechanical as possible experts in anticipation of litigation, their preliminary reports and communications with Plaintiff and Plaintiff's representatives

(Price Edwards, Plaintiff's property management firm) are inadmissible. Fed. R. Civ. P. 26(b)(4)(D).

3. **Preliminary draft of expert report by estimator.** Defendant has listed a prior draft report from Plaintiff's expert as an exhibit in the case. This was a repair estimate that Plaintiff's expert, Wayde Whetstone, was working on through his company, Scott-Whetstone, for the repair of the cast iron sewer pipe system in the building. Jeff Warren was an estimator for Wayde Whetstone. He prepared a preliminary estimate to demolish 190 kitchens and bathrooms in the 190-unit apartment building in order to replace the cast iron pipe. However, he did not account for the fact of city stats, international building codes, and ADA requirements. This was an obvious omission which Plaintiff's representatives would have discussed with Wayde Whetstone explaining that for a project of this size, plans would have to be submitted and permits would have to be pulled and inspections would have to be made by electrical, plumbing, framing, and fire inspectors and there would be numerous additions in costs to the preliminary estimate which included nothing for the increased cost of construction due to ordinance or law. Federal now wants to use this preliminary estimate to confuse the jury and cause unfair prejudice to Plaintiff with argument and innuendo that this 190-unit building could be gutted and put back together for the amount in the preliminary estimate.

Mr. Warren no longer works for the contractor Wayde Whetstone and is not going to be called as a witness. The Federal Rules of Civil Procedure provides for the protection of the initial drafts of expert witness reports. Rules 26(b)(3)(A) and (B) protect the drafts of any report required under Rule 26(a)(2) regardless of the form in which the draft is

recorded. For these reasons, Defendant should be prevented from using the preliminary estimate as an exhibit, from putting Jeff Warren on as a witness, or discussing the report or his testimony at trial.

4. **Steve Ford.** Mr. Ford was a consulting expert in anticipation of litigation who is not listed by Plaintiff and will not be called at trial. Therefore, Defendant should be precluded from mentioning or arguing about Mr. Ford pursuant to Fed. R. Civ. P. 26(b)(4)(D). Defendant has already had adjusters and engineers inspect and photograph the building. Defendant can show no compelling need or justification for calling Mr. Ford as a witness or talking about him at trial. Defendant already has an engineer's report that was used to deny coverage for Plaintiff's claim. Fed. R. Civ. P. 26(b)(4)(D) only allows Defendant to discover and/or use this information at trial upon showing "exceptional circumstances under which it is impractical for the party to obtain facts or opinions on the same subject by other means." Defendant has this information (i.e. appearance of building, damage, etc.) and its own experts on this.

5. **AAA Plumbing and Solar, LLC Invoice #1438 and the testimony of Mark Kiernan.** This regards the emergency repair of the main water line that burst in the front parking lot of the building as a result of the earthquake. This repair invoice was provided to Federal and was contained in Federal's claim file (Exhibit 14 [Federal/VTT 527]), but Federal never attempted to call Mr. Kiernan and talk with him about the emergency repair until well after this litigation was filed. Plaintiff does not object to the repair invoice (Exhibit 14) that was in Defendant's claim file but does object to Mr. Kiernan's testimony and to the repair invoice that Mr. Kiernan made notations on that was

produced at his deposition. This repair invoice was never used or relied upon by Defendant in the consideration of the claim and is therefore inadmissible under Fed R. Evid. 401, 402, 403, *Buzzard v. Farmers Ins. Co*., 1991 OK 127, 824 P.2d 1105 and *Buzzard v. McDanel*, 1987 OK 28, 736 P.2d 157. *See also the authorities and argument above in part of ¶1.*

6. **Former tenants Andrew Arnoldin, Tanner Grammar, Rick Hicks, Christie House, Mary McMahon, Anthony Blake Nelson, and Ronald Ranpersad.** These persons were former tenants at the building and were not consulted or interviewed by Defendant prior to the coverage denial of Plaintiff's claim on March 10, 2017. For this reason, their testimony is not relevant, and any slight relevance is greatly outweighed by the danger of unfair prejudice to Plaintiff and confusion to the jury. Fed. R. Evid. 401, 402, 403. *See also Buzzard v. Farmers Ins. Co.,* 1991 OK 127, 824 P.2d 1105, 1109 ("*Buzzard II*") (the focus is whether the insurer had a "good faith belief, at the time its performance was requested, that it had justifiable reason for withholding payment under the policy") (quoting *Buzzard v. McDanel*, 1987 OK 28, 736 P.2d 157, 159 ("*Buzzard I*")).

7. **Former employees Joan Gomez, Barbara Hurt Sanchez, Jerrica Nichols, and Foster Riley.** These persons were not interviewed by Defendant before denial and did not work for Plaintiff when the earthquake happened. Their testimony is not relevant. Any relevance is outweighed by unfair prejudice and confusion. FRE 401, 402, 403.

8. **Email from Scott Vaughn to Becky Sesock dated July 24, 2018.** Scott Vaughn is a former maintenance person at the building who sent an email (Exhibit 15) to the property manager listing possible excuses the insurance company might try to use to deny the claim. This was well after the denial. Mr. Vaughn is not listed as an expert.

Neither party asked him to provide this report or his opinions and obviously his letter and opinions were not considered by Defendant when it denied the claim. This email is inadmissible hearsay under Fed. R. Evid. 802 and is not relevant under Fed. R. Evid. 401, 402, 403. Mr. Vaughn is not listed as an expert and no expert report has been provided as required by Fed. R. Civ. P. 26(a)(2)(B).

9. **Purdom HUD complaint.** A former tenant at Midtown Apartments made a fair housing ("HUD") complaint against VTT's property manager. The complaint has no relevance to this case and is potentially very prejudicial and should be excluded under Fed. R. Evid. 401, 402, 403.

10. **Plaintiff's alleged untimely production of discovery responses.** Defendant filed a motion to compel which the Court sustained. Plaintiff produced supplemental responses and documents. Defendant should be prevented from arguing about or commenting on the timeliness of Plaintiff's response or the fact of this Court's order. Any slight relevance would be greatly outweighed by the danger of unfair prejudice. Fed. R. Evid. 401, 402, 403. This would also create the unfair danger of prejudice to Plaintiff's counsel since all documents were produced through Plaintiff's counsel, Plaintiff's representatives would be unable to explain the timing of all production. This would create a gap in evidence to rebut Defendant's unfair accusations unless Plaintiff's counsel explained the production to the jury. This would put Plaintiff's counsel in the untenable situation of needing to testify to correct Defendant's accusations. The timing of Plaintiff's production is of very slight relevance if it is relevant at all. On the other hand, the prejudice would be severe and unfair if Defendant is allowed to argue, infer, or

complain about the timing of the production or that a motion to compel was filed and sustained by the Court.

11. **Alleged comments by Plaintiff's CEO regarding certain nationalities.** One of the former maintenance workers for Price Edwards, Scott Vaughn, testified that Plaintiff's CEO made at one time disparaging comments against certain nationalities. This has nothing to do with this case and should be excluded because of unfair prejudice. Fed. R. Evid. 401, 402, 403.

12. **Personal financial statement of Vaios Theodorakos.** Defendant has listed the personal financial statement of VTT owner Vaios Theodorakos as an exhibit in this case. This has nothing to do with this lawsuit and is only being proposed to show the wealth of Mr. Theodorakos to the jury. Any slight relevance this information would have would be greatly outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. Further, this information is of a highly-sensitive personal and confidential nature, and there does not appear to be any conceivable justification for trying to put this information into evidence.

13. **Testimony regarding alleged discrepancies in Plaintiff's insurance application on the sprinkler system and regarding another property – Dutch Village.** Defendant's underwriter, Matthew Coyle, was deposed in October of 2018. It is anticipated that Defendant will attempt to use some of the information in Mr. Coyle's deposition regarding alleged discrepancies in Plaintiff's applications for insurance in 2010, 2012, and 2013 regarding the sprinkler system in the subject building and regarding whether Plaintiff replaced the roof on another property in another state called "Dutch

Village." These alleged discrepancies were six and three years ago, respectively, before the earthquake and had nothing to do with the claim handling in this case. This testimony or argument would only serve to confuse the jury as to the issues in this case. Such information is not relevant and any slight relevance would be greatly outweighed by the danger of unfair prejudice to Plaintiff. Therefore, this information is inadmissible under FRE 401, 402, 403.

14. **Any demonstrative exhibits prepared from information provided by experts Plaintiff seeks to exclude—John Osteraas, Navid Nastar, and William Coleman.** If Messrs. Osteraas, Nastar, and Coleman are not allowed to testify, then for the same reasons, Defendant should be precluded from using any of the opinions and exhibits from their reports in demonstrative exhibits.

**Respectfully Submitted,**

By: s/Steven S. Mansell
Steven S. Mansell, OBA #10584
Mark A. Engel, OBA #10796
Kenneth G. Cole, OBA #11792
M. Adam Engel, OBA #32384
**MANSELL ENGEL & COLE**
204 North Robinson Avenue, 21st Floor
Oklahoma City, OK 73102-7001
T: (405) 232-4100 ** F: (405) 232-4140
**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2019, I electronically transmitted this document to the Clerk of the Court using the ECF System for filing. Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

John D. Stiner
Stiner Law Firm PLLC
119 North Robinson Avenue, Suite 320
Oklahoma City, OK 73102
(405) 602-1591
john@stinerlaw.com

Joseph A. Ziemianski (*Pro Hac Vice*)
Peter B. Magnuson (*Pro Hac Vice*)
LyondellBasell Tower
1221 McKinney, Suite 2900
Houston, TX 77010
(832) 214-3912
jziemianski@cozen.com
pmagnuson@cozen.com

**ATTORNEYS FOR DEFENDANT**

s/Steven S. Mansell
Steven S. Mansell